**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| **JOSHUA THEODORE;** | ) |
| **MICHAEL BURKE; GEORGE** | ) |
| **ALEXANDROPOLOUS; GERTRUDE** | ) |
| **KOWAL; STEVEN CHOUINARD;** | ) |
| **NANCY TREHUB; GUN OWNERS'** | ) |
| **ACTION LEAGUE, INC.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil Action No. _____** |
| | ) |
| **ANDREA CAMPBELL, in her official** | ) |
| **capacity as Attorney General of the** | ) |
| **Commonwealth of Massachusetts; JOHN** | ) |
| **E. MAWN, in his official capacity as** | ) |
| **Colonel of the Massachusetts State Police,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Joshua Theodore, Michael Burke, George Alexandropolous, Gertrude Kowal, Steven Chouinard, Nancy Trehub, and Gun Owners' Action League, Inc. (collectively, "Plaintiffs"), by and through the undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities as state officials responsible for administration and enforcement of Massachusetts laws governing the licensure of possession and carry of firearms. Plaintiffs seek a temporary restraining order and/or preliminary injunction, to be followed by declaratory and permanent injunctive relief, barring Defendants from enforcing Massachusetts' newly enacted licensing regimes for Firearm Identification Cards and Licenses to Carry, which in numerous ways violate the Second, Fifth, and Fourteenth Amendments to the Constitution of the United States. In support of their Complaint, Plaintiffs hereby allege as follows:

## INTRODUCTION

1.      The Second Amendment to the Constitution of the United States guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Supreme Court has made clear that "the Second amendment guarantees an 'individual right to possess and carry weapons in case of confrontation,'" which includes the right to possess arms "in the home," *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), and the "right to 'bear' arms in public for self-defense," *N.Y. State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1, 33 (2022) (quoting *Heller*, 554 U.S. at 592).

2.      At issue in *Bruen* was a New York carry-license regime that granted open-ended discretion to licensing officials and required applicants to demonstrate to a licensing officer that they had "proper cause" for obtaining a Handgun Carry License. *Bruen* struck down New York's proper-cause licensing requirement because the state failed to meet its "burden to identify an American tradition justifying New York's proper-cause requirement." *Id.* at 38. The majority also contrasted the constitutional inadequacy of discretionary, may-issue licensing regimes from those that are non-discretionary, shall-issue regimes. *Id.* at 38 n.9. In a concurring opinion, Justice Kavanaugh wrote that the regime's "open-ended discretion" was also "constitutionally problematic" and that only non-discretionary licensing regimes comply with the Second Amendment. *Id.* at 79–80 (Kavanaugh, J., concurring). Under *Bruen*, any firearm-license regime is unconstitutional if it is not "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17, 24.

3.      The Commonwealth of Massachusetts recently enacted onerous firearms legislation that imposes sweeping arms bans, magazine restrictions, registration requirements, and licensing preconditions that are as burdensome as they are ahistorical. *See* An Act Modernizing Firearms Law, H.4885, 193d Mass. Gen. Ct. 2023–2024 Sess. The new legislation's effective date is

October 23, 2024, but the Massachusetts State Police will begin enforcing the new training requirement on August 1, 2024.

4.      Under House Bill 4885, in order for any ordinary, law-abiding citizen of Massachusetts to exercise the fundamental right to keep and bear arms enshrined in the Second Amendment, the citizen must obtain either a Firearm Identification Card ("FID Card") or a License to Carry ("LTC"). An FID Card allows the citizen "to purchase, transfer, possess, and carry rifles and shotguns that are not large capacity or semi-automatic, and the ammunition therefore." Mass. Gen. Laws, ch. 140, § 129B(a). An LTC permits the citizen "to purchase, rent, lease, borrow, possess, and carry firearms, including large capacity firearms and ammunition therefor," and including handguns, *id.* § 131(a), as well as the arms entitled to be possessed and carried by an FID Card holder, *id.* § 131(c). Both of these licensing regimes impose burdensome, ahistorical preconditions on the right of Massachusetts citizens to keep and bear arms. Both are unconstitutional.

5.      The new LTC licensing regime cannot be allowed to be enforced for the simple reason that its training requirements are impossible to meet at the present time. One of the preconditions to obtaining an LTC is satisfaction of a host of new training requirements, Mass. Gen. Laws, ch. 140, § 131P(b)(i), and the submission of "a basic firearms safety certificate meeting the requirements of section 131P" along with the LTC application, *id.* § 131(b). But as of the filing of this Complaint, none of the necessary rules and regulations governing the training requirements have been promulgated; no approved courses exist; and no instructors have been certified. Massachusetts citizens hopeful to submit their first-time application for an LTC cannot do so because it is impossible to comply with the training requirements. And the Massachusetts State Police has announced that classes taught after August 1, 2024, that do not adhere to the updated

3

curriculum (for which no rules or regulations have been promulgated) are insufficient to obtain an LTC. Without an LTC, they cannot possess a handgun for self-defense, *Heller*, 554 U.S. at 631, or carry a handgun in public for self-defense, *Bruen*, 597 U.S. at 38. This failure of implementation is causing immediate irreparable harm to Plaintiffs, the members of GOAL, and the law-abiding citizenry of the Commonwealth of Massachusetts.

6.     In the immediate term, Plaintiffs respectfully request that this Court issue a temporary restraining order and/or preliminary injunction barring Defendants from enforcing the LTC licensing regime unless and until adequate infrastructure is implemented. Plaintiffs also request declaratory relief holding unconstitutional the ahistorical, burdensome, and arbitrarily discretionary FID Card and LTC licensing regimes, and permanent injunctive relief barring enforcement of those laws against the individual Plaintiffs and GOAL's members.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343.

8.     This Court has authority to grant the remedies Plaintiffs under 28 U.S.C. §§ 1651, 2201, 2202, and 42 U.S.C. §§ 1983 and 1988.

9.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A)–(C) because a defendant resides in this district, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and because at least one plaintiff resides in this district. Venue is proper in this division because at least one plaintiff resides in this division.

## PARTIES

10.     Plaintiff Joshua Theodore is a citizen of the United States and the Commonwealth of Massachusetts. He resides in Watertown, Massachusetts.

11.     Plaintiff Michael Burke is a citizen of the United States and the Commonwealth of Massachusetts. He resides in Brockton, Massachusetts.

12.     Plaintiff George Alexandropolous is a citizen of the United States and the Commonwealth of Massachusetts. He resides in Blackstone, Massachusetts.

13.     Plaintiff Gertrude Kowal is a citizen of the United States and the Commonwealth of Massachusetts. She resides in Southwick, Massachusetts.

14.     Plaintiff Steven Chouinard is a citizen of the United States and the Commonwealth of Massachusetts. He resides in Hudson, Massachusetts.

15.     Plaintiff Nancy Trehub is a citizen of the United States and the Commonwealth of Massachusetts. She resides in Sudbury, Massachusetts.

16.     Plaintiff Gun Owners' Action League, Inc. ("GOAL") is a membership organization focused on promoting and defending the fundamental right of ordinary citizens to keep and bear arms for lawful purposes, including competition, recreation, and self-defense. GOAL's principal place of business is located in Westboro, Massachusetts. The licensing restrictions enacted as part of House Bill 4885 directly impact GOAL's central mission. GOAL has thousands of members who reside in Massachusetts, including individual Plaintiffs, who wish to possess and carry firearms for self-defense, without the hindrance of burdensome, ahistorical licensing restrictions. GOAL brings this action on behalf of its members in Massachusetts who have been, are being, and will continue to be adversely and irreparably harmed by Defendants' enforcement of the FID Card and LTC licensing regimes.

17.     Defendant Andrea Campbell is the Attorney General of the Commonwealth of Massachusetts. Defendant Campbell, as Attorney General, bears the authority and responsibility

to prosecute violations of Massachusetts criminal laws, including the challenged laws, on behalf of the Commonwealth. Defendant Campbell is sued in her official capacity.

18.     Defendant John E. Mawn is the Colonel of the Massachusetts State Police. Defendant Mawn, as Colonel, bears the authority and responsibility to administer, execute, and enforce Massachusetts firearm licensure laws. He is also tasked with many specific statutory responsibilities under the challenged laws, including to promulgate rules and regulations governing the recently-enacted training requirements, to certify course curriculum, to certify approved instructors, to post annual updates, and to conduct background investigations of license applicants. *See, e.g.*, Mass. Gen. Laws, ch. 140, §§ 121F, 131P.

## STATEMENT OF FACTS

19.     Even before enactment of House Bill 4885, the Commonwealth of Massachusetts has required citizens to comply with licensure requirements prior to possessing and carrying firearms. *See, e.g.*, *Hightower v. City of Boston*, 683 F.3d 61, 65 (1st Cir. 2012). Firearm licensure is nevertheless a uniquely modern invention and was unknown at the Founding.

20.     Massachusetts recently enacted sweeping gun-control legislation, that among other things imposes burdensome licensing regimes on the possession and carry of firearms for self-defense. *See* An Act Modernizing Firearms Law, H.4885, 193d Mass. Gen. Ct. 2023–2024 Sess.

21.     Under House Bill 4885, it is a crime for a law-abiding Massachusetts resident to possess "any firearm" unless the person, as relevant here, has an FID Card or LTC. Mass. Gen. Laws. ch. 269, § 10(a)(5)(2), (4). Violations of Section 10 are felonies punishable by imprisonment. *Id.*

## I.     General Requirements for a Firearm Identification Card

22.     A person holding an FID Card is entitled "to purchase, transfer, possess and carry rifles and shotguns that are not large capacity or semi-automatic, and the ammunition therefore.

Mass. Gen. Laws ch. 140, § 129B(c). An FID Card is valid for between five and six years: it expires on the holder's birthday between years five and six. *Id.* § 129(d).

23.     A person seeking an FID Card must satisfy several objective and subjective requirements.

24.     To be eligible for an FID Card, an applicant must: (1) be 18 or older (or at least 15 with parental permission); (2) reside in the jurisdiction of the licensing authority or in an area of exclusive federal jurisdiction; and (3) submit an initial application or renewal application to the licensing authority. *Id.* § 129B(a).

25.     The applicant also must obtain and "submit[] with their application a basic firearms safety certificate or other certificate meeting the requirements of section 131P," *id.* § 129(b)(b), which necessarily also subjects the applicant to any and all burdens associated with obtaining that certificate, including the completion of a safety course, passing a live-fire component and written examination, and paying any prescribed safety-course fee.

26.     Along with the application, the applicant must pay a $100.00 fee. *Id.* § 121F(o)(i).

27.     The applicant must submit to fingerprinting and a photograph. *Id.* § 121F(c); *id.* § 121F(i).

28.     After submitting the required documentation and payment, the applicant must wait up to 40 days while the licensing authority and state police conduct a background investigation and suitability assessment. *Id.* § 129B(a); *id.* § 121F(a). A licensing authority cannot issue an FID Card (or renew one) unless, after the background investigation and suitability assessment, "it appears that the applicant is neither a prohibited person nor determined to be unsuitable." *Id.* § 129B(a). Section 129B provides that "the licensing authority shall issue" an FID Card if the

applicant satisfies all of the application criteria and passes the background investigation and suitability assessment. *Id.* § 129B(a).

29.     When a person seeks to renew a previously issued FID Card, that person is exempted from fingerprinting requirements "if the applicant's fingerprints are on file with the department of state police." *Id.* § 121F(c). A person who possessed an FID Card on August 1, 2024, is also exempt from submitting a safety certificate or other satisfactory certificate "when applying for renewal of such licensure." *Id.* § 131P(a).

## II.    General Requirements for a License to Carry

30.     A person holding an LTC is entitled "to purchase, rent, lease, borrow, possess and carry firearms, including large capacity firearms and ammunition therefor," which includes handguns but expressly excludes "assault-style firearms unless such transfer, possession, or carry is permitted under section 131M." Mass. Gen. Laws, ch. 140, § 131(a). A person holding an LTC may also "own, possess, purchase and transfer rifles and shotguns that are not large capacity or semi-automatic, consistent with the entitlements conferred by a firearm identification card issued under section 129B." *Id.* § 131(c). An LTC is valid for between five and six years: it expires on the holder's birthday between years five and six. *Id.* § 131(e).

31.     A person seeking an LTC must satisfy several objective and subjective requirements, including requirements different from or additional to those applicable to FID Card applications.

32.     To be eligible for an LTC, an applicant must: (1) be 21 or older; (2) reside in the jurisdiction of the licensing authority or in an area of exclusive federal jurisdiction; and (3) submit an initial application or renewal application to the licensing authority. *Id.* § 131(d).

33.     The applicant must also obtain and "submit[] with their application a basic firearms safety certificate meeting the requirements of section 131P," *id.* § 131(b), which necessarily also

subjects the applicant to any and all burdens associated with obtaining that certificate, including the completion of a safety course, passing a live-fire component and written examination, and paying any prescribed safety-course fee.  Unlike for FID Cards, a hunter education course cannot serve as a substitute for the basic firearms safety certificate when a person applies for an LTC. *See id.*; *id.* § 131P(a).

34.    Along with the application, the applicant must pay a $100.00 fee. *Id.* § 121F(o)(i).

35.    The applicant must submit to fingerprinting and a photograph. *Id.* § 121F(c); *id.* § 121F(i).

36.    After submitting the application, attendant documentation, and payment, the applicant must wait up to 40 days while the licensing authority and state police conduct a background investigation and suitability assessment. *Id.* § 131(d); *id.* § 121F(a). A licensing authority cannot issue an FID Card (or renew one) unless, after the background investigation and suitability assessment, "it appears that the applicant is neither a prohibited person nor determined to be unsuitable." *Id.* § 131(d). Section 131 provides that "the licensing authority shall issue" an LTC if the applicant satisfies all of the application components and passes the background investigation and suitability assessment. *Id.* § 131(d).

37.    When a person seeks to renew a previously issued LTC, that person is exempted from fingerprinting requirements "if the applicant's fingerprints are on file with the department of state police." *Id.* § 121F(c). A person who possessed an LTC on August 1, 2024, is also exempt from submitting a safety certificate "when applying for renewal of such licensure." *Id.* § 131P(a).

**III.    The (Unavailable) Safety Training Requirement**

38.    House Bill 4885 requires an applicant for an FID Card to submit either "a basic firearms safety certificate or other certificate meeting the requirements of section 131P." Mass. Gen. Laws, ch. 140, § 129B(b). For FID Card application, Section 131P allows applicants to

submit "a certificate issued under section 13 of chapter 131 evidencing satisfactory completion of a hunter education course . . . as a valid substitute for a basic firearms safety certificate required under this section for the issuance of a firearm identification card pursuant to section 129B." *Id.* § 131P(a).

39.     For LTC applications, House Bill 4885 more strictly requires an applicant to submit "a basic firearms safety certificate meeting the requirements of section 131P," and it provides for no alternative. *Id.*§ 131(b).

40.     There are no available avenues to obtain a basic firearms safety training certificate. While an FID applicant may submit a certificate of completion of a hunter education course, an LTC applicant has no means of obtaining "a basic firearms safety certificate meeting the requirements of section 131P." *See id.*

41.     House Bill 4885 orders the Colonel of Massachusetts State Police to:

(a)     "promulgate rules and regulations governing the issuance and form of basic firearms safety certificates required pursuant to this section, including minimum requirements for course curriculum and the contents of any written examination," *id.* § 131P(b)(i);

(b)     "create a written examination and establish minimum requirements to pass said examination that shall be used in all firearm safety courses or programs mandated under this section," *id.*; and

(c)     "certify certain persons as firearms safety instructors, certify safety course curriculum and annually update and post on the department of state police's website a list of approved instructors," *id.* § 131P(b)(ii).

42.     House Bill 4885 sets requirements for who can be certified as a firearm safety instructor: "any person certified by a nationally recognized organization that fosters safety in

firearms, or any other person in the discretion of said colonel, to be competent to give instruction in a basic firearms safety course." *Id.*

43.     The new law also sets minimum requirements for safety course curriculum: "Upon application to the colonel of state police, said colonel may, at their discretion, certify as a firearms safety instructor any person who operates a firearms safety course or program that provides in its curriculum: (A) the safe use, handling and storage of firearms; (B) methods for securing and childproofing firearms; (C) the applicable laws relating to the possession, transportation and storage of firearms; (D) knowledge of operation, potential dangers and basic competency in the ownership and use of firearms; (E) injury and suicide prevention and harm reduction education; (F) applicable laws relating to the use of force; (G) disengagement tactics; and (H) live firearms training." *Id.* § 131P(b)(ii).

44.     House Bill 4885 also authorizes the Colonel to "impose a fee of $50 for initial issuance of such certification" and sets a "certification renewal" fee at $10. *Id.* § 131P(b)(iii).

45.     Despite *Bruen*'s rejection of discretionary licensing regimes, 597 U.S. at 13–15, 38 n.9, House Bill 4885 confers exactly that sort of unbridled discretion to safety instructors, who "may, in their discretion, issue a basic firearms safety certificate to any person who successfully completes the requirements of a basic firearms safety course approved by the colonel." *Id.* § 131P(b)(iii). Nothing requires them to issue a certificate upon completion.

46.     Section 131P does provide "that persons possessing a firearms identification card or license to carry firearms prior to the implementation of live firearms trainings as required in this section shall also be exempt from such requirement." *Id.* But live-firearms training is only one of the (burdensome and unconstitutional) demands of the training requirement. It is eighth of eight mandatory training categories, which also will include the safe use, handling and storage of

firearms; methods for securing and childproofing firearms; the applicable laws relating to the possession, transportation and storage of firearms; knowledge of operation, potential dangers and basic competency in the ownership and use of firearms; injury and suicide prevention and harm reduction education; applicable laws relating to the use of force; and disengagement tactics. *See id.* § 131P(b)(ii)(H).

47.     Section 131P also exempts from the training requirements: state employees, military, and law enforcement. *Id.* § 131P(a). But none of the Plaintiffs or relevant GOAL members falls within these exceptions.

48.     The Colonel of Massachusetts State Police has not promulgated any rules or regulations governing the issuance or form of basic firearms safety certificates. The Colonel has not established any minimum requirements for the training curriculum, the contents of any written examination, or the minimum requirements for passing that examination. Nor has the Colonel certified anyone as an approved firearms safety instructor or certified any course.

49.     On July 31, 2024, the Massachusetts State Police announced that safety courses taught after August 1, 2024, that do not adhere to the updated curriculum (for which no rules or regulations have been promulgated) are insufficient to obtain an LTC.

50.     As a result, first-time LTC applicants who are subject to this training requirement, without any alternative such as the hunter education course for first-time FID applicants, are categorically unable to obtain the required certificate, unable to submit a compliant LTC application, and unable to possess or carry a handgun for self-defense. *See id.* § 131P(a) ("No application for the issuance of a firearm identification card or license to carry shall be accepted or processed by the licensing authority without such certificate attached thereto.").

IV.     **Discretionary "Suitability" Review**

51.     Any initial application or renewal application for an FID Card or LTC requires the applicant undergo discretionary "suitability" review. Mass. Gen. Laws, ch. 140, § 129B(a); *id.* § 131(d). House Bill 4885 requires the licensing authority to "deny any application for a permit, card or license under sections 122, 122B, 129B, 131, or 131F, or renewal thereof, to a person the licensing authority determines to be unsuitable to hold a permit, card or license." *Id.* § 121F(k). The next section, in apparent contradiction, provides that FID Card applicants are treated differently with respect to suitability-based denials: "In the case of an application or renewal of a firearm identification card under section 129B, a licensing authority shall not have the authority to deny an application on the grounds of unsuitability but may file a petition requesting that the district court having jurisdiction deny said application on unsuitability grounds." *Id.* § 121F(l).

52.     House Bill 4885 prescribes what the suitability review entails: "A determination of unsuitability shall be based on reliable, articulable and credible information that the applicant has exhibited or engaged in behavior that suggests that, if issued a permit, card or license, the applicant may create a risk to public safety or a risk of danger to themselves or others." *Id.* § 121F(k).

53.     The law also authorized the licensing authority to "revoke or suspend any license, card or permit issued pursuant to sections 122, 122B, 122D, 129B. 131 or 131F upon a subsequent determination of unsuitability as defined in subsection (k) or upon satisfactory proof that the license, card or permit holder has violated or permitted any violation of this chapter; provided, however, that in the case of a firearm identification card issued under section 129B, a licensing authority shall file a petition to the district court for suspension or revocation of said card, and said petition shall effect such suspension or revocation pending a judicial determination of sufficient

13

evidence of unsuitability, which the court shall make within 15 days of the filing of the petition, after which the procedures and standards of subsection (l) shall apply." *Id.* § 121F(u)(1).

54.     The suitability assessment ahistorically allows Defendants, in their unfettered discretion, to deny and/or revoke the right to armed self-defense to law-abiding citizen. As for LTC applicants, the suitability assessment provides no due process protections.

**V.     The FID Card and LTC licensing regimes violate Plaintiffs' and GOAL Members' Second Amendment rights.**

55.     Plaintiff Theodore is a responsible, law-abiding, adult citizen and resident of Massachusetts. Mr. Theodore is eligible to possess firearms under federal and state law. Mr. Theodore desires and intends to lawfully possess a handgun at home and carry a handgun outside the home for self-defense without the need to undergo an unconstitutional licensing process. He possesses all of the personal qualifications necessary to obtain an LTC: he is over 21 years of age, is not a prohibited person, and is suitable to possess and carry a firearm. He is ready and able to apply for an LTC, otherwise eligible for an LTC, but prevented from applying for an LTC because the LTC Regime is non-operational. Mr. Theodore attempted to apply for an LTC in June 2024, during which he was instructed to return in October 2024. As of August 1, 2024, he is unable to apply because there is no available avenue to obtain the required basic firearm safety certificate. But for the credible threat of prosecution, Mr. Theodore would possess and carry a handgun for self-defense.

56.     Plaintiff Burke is a responsible, law-abiding, adult citizen and resident of Massachusetts. Mr. Burke is eligible to possess firearms under federal and state law. Mr. Burke desires and intends to lawfully possess a handgun at home and carry a handgun outside the home for self-defense without the need to undergo an unconstitutional licensing process. He possesses all of the personal qualifications necessary to obtain an LTC: he is over 21 years of age, is not a

prohibited person, and is suitable to possess and carry a firearm. He is ready and able to apply for an LTC, otherwise eligible for an LTC, but prevented from applying for an LTC because the LTC Regime is non-operational. Mr. Burke attempted to apply for an LTC in June 2024 at the Brockton Police Department, but he was instructed to obtain a letter explaining why he wants an LTC. As of August 1, 2024, he is unable to apply because there is no available avenue to obtain the required basic firearm safety certificate. But for the credible threat of prosecution, Mr. Theodore would possess and carry a handgun for self-defense.

57.    Plaintiff Alexandropolous is a responsible, law-abiding, adult citizen and resident of Massachusetts. Mr. Alexandropolous is eligible to possess firearms under federal and state law. Mr. Alexandropolous desires and intends to lawfully possess a handgun at home and carry a handgun outside the home for self-defense without the need to undergo an unconstitutional licensing process. He possesses all of the personal qualifications necessary to obtain an LTC: he is over 21 years of age, is not a prohibited person, and is suitable to possess and carry a firearm. He is ready and able to apply for an LTC, otherwise eligible for an LTC, but prevented from applying for an LTC because the LTC Regime is non-operational. When Mr. Alexandropolous attempted to apply for an LTC, he was told that he could not apply for at least 60 days. As of August 1, 2024, he is unable to submit an application because there is no available avenue to obtain the required basic firearm safety certificate. But for the credible threat of prosecution, Mr. Alexandropolous would possess and carry a handgun for self-defense.

58.    Plaintiff Kowal is a responsible, law-abiding, adult citizen and resident of Massachusetts. Ms. Kowal is a 55-year old domestic abuse survivor. Ms. Kowal is eligible to possess firearms under federal and state law. Ms. Kowal possesses an LTC that she will be required to renew in June 2025. Ms. Kowal desires and intends to lawfully possess a handgun at home and

carry a handgun outside the home for self-defense without the need to undergo an unconstitutional licensing process. She possesses all of the personal qualifications necessary to obtain an LTC: she is over 21 years of age, is not a prohibited person, and is suitable to possess and carry a firearm. Ms. Kowal desires and intends to renew her LTC, subjecting her in June 2025 and every six years thereafter to the LTC licensing regime's expenses, inconveniences, and other impermissible burdens. In other words, in materially similar situations in the future, Ms. Kowal will be subjected to the LTC licensing regime's burdensome renewal process such that the licensing process will repeatedly violate her constitutional rights.

59.     Plaintiff Chouinard is a 70-year-old responsible, law-abiding, adult citizen and resident of Massachusetts. Mr. Chouinard is eligible to possess firearms under federal and state law. Mr. Chouinard possesses an LTC that he will be required to renew in July 2025. Mr. Chouinard desires and intends to lawfully possess a handgun at home and carry a handgun outside the home for self-defense without the need to undergo an unconstitutional licensing process. He possesses all of the personal qualifications necessary to obtain an LTC: he is over 21 years of age, is not a prohibited person, and is suitable to possess and carry a firearm. Mr. Chouinard desires and intends to renew his LTC, subjecting him in July 2025 and every six years thereafter to the LTC licensing regime's expenses, inconveniences, and other impermissible burdens. In other words, in materially similar situations in the future, Mr. Chouinard will be subjected to the LTC licensing regime's burdensome renewal process such that the licensing process will repeatedly violate his constitutional rights.

60.     Plaintiff Trehub is a responsible, law-abiding, adult citizen and resident of Massachusetts. Ms. Truhub is a retired prosecutor. Ms. Truhub is eligible to possess firearms under federal and state law. Ms. Truhub possesses an LTC that she will be required to renew in March

2025. Ms. Truhub desires and intends to lawfully possess a handgun at home and carry a handgun outside the home for self-defense without the need to undergo an unconstitutional licensing process. She possesses all of the personal qualifications necessary to obtain an LTC: she is over 21 years of age, is not a prohibited person, and is suitable to possess and carry a firearm. Ms. Truhub desires and intends to renew her LTC, subjecting her in March 2025 and every six years thereafter to the LTC licensing regime's expenses, inconveniences, and other impermissible burdens. In other words, in materially similar situations in the future, Ms. Truhub will be subjected to the LTC licensing regime's burdensome renewal process such that the licensing process will repeatedly violate her constitutional rights.

61.     Plaintiff GOAL has members, including individual Plaintiffs, who are deterred or prevented from submitting initial and/or renewal applications for an FID Card and/or LTC because of the expense, inconvenience, and other impermissible burdens of challenged laws, including both the application process and its constituent parts, as well as members who have or would apply for an FID Card and/or LTC but cannot because there is no available avenue to obtain the required basic firearm safety certificate.

62.     The individual Plaintiffs, and members of GOAL, are being irreparably harmed by the inability to obtain an FID Card and/or LTC, including through their present inability to acquire, possess, and carry a handgun or other protected firearm for self-defense.

### CLAIMS FOR RELIEF

### COUNT I
### Violation of the Second and Fourteenth Amendments
### 42 U.S.C. § 1983
### (Right to Keep and Bear Arms)

63.     Plaintiffs incorporate paragraphs 1 through 62 as if fully set forth herein.

64.    The individual Plaintiffs and GOAL's members are responsible, law-abiding citizens who are undoubtedly part of "the people" whose right to keep and bear arms is protected by the Second Amendment. The firearms at issue in this case are protected "arms." And the Second Amendment's plain text protects the conduct of acquiring, possessing, and carrying the firearms at issue in this case for self-defense and other lawful conduct.

65.    The FID Card licensing regime violates the Second Amendment because:

(a)    the objective, subjective, and discretionary preconditions to obtaining a FID Card, detailed above in paragraphs 19–62 and including their attendant burdens, expenses, and delays burden conduct protected by the Second Amendment; and

(b)    the objective, subjective, and discretionary preconditions to obtaining a FID Card, detailed above in paragraphs 19–62 and including their attendant burdens, expenses, and delays are not consistent with this Nation's historical tradition of firearms regulation.

66.    The LTC licensing regime violates the Second Amendment because:

(a)    the objective, subjective, and discretionary preconditions to obtaining an LTC, detailed above in paragraphs 19–62 and including their attendant burdens, expenses, and delays burden conduct protected by the Second Amendment; and

(b)    the objective, subjective, and discretionary preconditions to obtaining an LTC, detailed above in paragraphs 19–62 and including their attendant burdens, expenses, and delays are not consistent with this Nation's historical tradition of firearms regulation.

67.    Requiring law-abiding citizens to obtain a license as a precondition to keeping and bearing protected arms burdens conduct protected by the Second Amendment, and such burdens are not consistent with this Nation's historical tradition of firearms regulation.

68.     Absent the promulgation and implementation of training-requirement infrastructures by the Colonel of Massachusetts State Police, the individual Plaintiffs and GOAL members are categorically unable to obtain an LTC, and they cannot obtain, possess, and/or carry a handgun for self-defense.

69.     By infringing the right to bear arms in these ways, the Massachusetts laws and regulations discussed in the foregoing allegations violate the Second Amendment, which applies to Defendants by operation of the Fourteenth Amendment, both facially and as applied to the individual Plaintiffs and GOAL's members.

**COUNT II**
**Violation of the Fifth and Fourteenth Amendments**
**42 U.S.C. § 1983**
**(Void for Vagueness)**

70.     Plaintiffs incorporate paragraphs 1 through 62 as if fully set forth herein.

71.     A criminal statute is void for vagueness if it fails to give "fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). The "void for vagueness doctrine . . . serves as a faithful expression of ancient due process and separation of powers principles the framers recognized as vital to ordered liberty under our Constitution." *Sessions v. Dimaya*, 584 U.S. 148, 176 (2018) (Gorsuch, J., concurring in part and concurring in the judgment).

72.     The LTC licensing regime and FID Card licensing regime are unconstitutionally vague because the "suitability" requirement is so standardless that it invites arbitrary enforcement.

73.     The LTC licensing regime and FID Card licensing regime are unconstitutionally vague, and their enforcement must be enjoined.

74.     By enforcing the LTC licensing regime and FID Card licensing regime, Defendants have deprived Plaintiffs and GOAL's members of their constitutionally protected due process rights.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

(a)     Enter a temporary restraining order and/or preliminary injunction barring Defendants from enforcing the LTC licensing regime unless and until adequate infrastructure is implemented.

(b)     Enter an order declaring that the challenged provisions of the LTC licensing regime and FID Card licensing regime are unconstitutional, in their whole and/or constituent parts, on their face and as applied to the individual Plaintiffs and GOAL's members.

(c)     Enter a permanent injunction prohibiting Defendants from enforcing the LTC licensing regime and FID Card licensing regime, in their whole and/or constituent parts, against individual Plaintiffs and GOAL's members.

(d)     Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988;

(e)     Granting such other and further relief as this Court deems just and proper.

Dated: August 1, 2024                    Respectfully submitted,

**CAMPBELL CONROY & O'NEIL, P.C.**

*/s/  Christopher R. Howe*
James M. Campbell, BBO 541882
Christopher R. Howe, BBO 652445
20 City Square, Suite 300
Boston, MA 02129
Telephone: (617) 241-3000
jmcampbell@campbell-trial-lawyers.com
chowe@campbell-trial-lawyers.com

**BRADLEY ARANT BOULT CUMMINGS LLP**

John Parker Sweeney (*pro hac vice* forthcoming)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 719-8216
Facsimile: (202) 719-8316
jsweeney@bradley.com

James W. Porter, III (*pro hac vice* forthcoming)
William Chadwick Lamar, Jr. (*pro hac vice*
forthcoming)
Bradley Arant Boult Cummings LLP
1819 5th Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-8285
Facsimile: (205) 488-6285
jporter@bradley.com
clamar@bradley.com

*Counsel for Plaintiffs*